UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
APR 16 2009
Clerk, U.S. District and
Bankruptcy Courts

TAFT KELLY
10512 Rodney Road
Silver Spring, MD 20903

   Plaintiff,

v.

RAY LAHOOD, Secretary
DEPARTMENT OF TRANSPORTATION
1200 New Jersey Avenue, S.E.
Washington, DC 20590

   Defendant.

Case: 1:09-cv-00703
Assigned To : Roberts, Richard W.
Assign. Date : 4/16/2009
Description: Employ. Discrim.

JURY ACTION

## COMPLAINT

1. This is a suit brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, et.seq. at §§2000e-16 (hereinafter called Title VII). Plaintiff is seeking damages against his employer for discriminating and retaliating against him because of his race by evaluating him poorly, suspending him for bogus offenses, bypassing him for promotion, issuing him poor performance evaluations for FY 2006, 2007 and 2008 and then removing him from his Division Administrator position and involuntarily reassigning him to another position.

2. Jurisdiction of this Court is invoked pursuant to 42 U.S.C §2000e-5 and 42 U.S.C §2000e-16.

3. Venue is appropriate under 42 U.S.C §2000e-5 and 42 U.S.C §2000e-16 because this is the judicial district in which the cause of action arose and discriminatory practices occurred.

4. Plaintiff is commencing this action within 90 days after receiving his right to sue authorization from the EEOC and he has timely exhausted all administrative requirements for bringing this claim.

## THE PARTIES

5. The plaintiff, Taft Kelly, is a resident of Silver Spring, MD who was employed by Defendant at all times relevant in the District of Columbia.

6. Defendant, Ray LaHood, is Secretary of the Department of Transportation and is being sued in his formal capacity as head of that Agency.

## FACTS

7. Plaintiff, Taft Kelly, is a 46-year old African American male.

8. Plaintiff has worked for Defendant agency for over 22 years in various positions and regularly received good evaluations and several promotions over the years. Prior to 2006 Plaintiff had worked under 10 different supervisors and was never disciplined for any reason and always received good performance evaluations.

9. In 2000 Plaintiff was promoted to the position of State Director of the Federal Motor Carrier Safety Administration at the GS-13 level. It was upgraded to a GS-14 position the very next year. Plaintiff received very good performance evaluations as the head of the DC office and as recently as 2005 he was issued a monetary special act award for his "excellent" overall performance.

10. In 2006, Plaintiff's former supervisor retired and he was replaced by Robert Miller (Caucasian), who was appointed to be Eastern Service Center Field Administrator, effective 4/16/06. Mr. Miller did not actually relocate to his Eastern Service Center office until mid June 2006.

11. Plaintiff's FY 2006 performance evaluation was due in July 2006. On August 18, 2006, Mr. Miller presented plaintiff with an "achieved results" rating form and commented that he delegated too much and needed to improve on financial management. There was no narrative attached with the evaluation explaining the rating. Mr. Miller asked Plaintiff to sign the document and to backdate its receipt, which he did. Mr. Miller promised to send Plaintiff a copy electronically as soon as he returned to his office, but he did not follow up despite repeated requests by Plaintiff. Finally, in mid-October, Plaintiff met with Defendant's Director of Civil Rights to complain about not receiving a copy of his evaluation and the "achieved results" lower rating. Despite repeated requests, Plaintiff did not receive the completed written evaluation until November 14, 2006.

12. Starting in September, 2006, Plaintiff requested a personal meeting with Mr. Miller to go over his evaluation. Mr. Miller kept rescheduling the meeting and did not meet with Plaintiff until November 17, 2006. On November 16, 2007, Plaintiff received an email from one of his subordinates (Ellise Griffin, African American) who reported having a conversation with an employee (Tony Kryfka, Caucasian) who worked at the Eastern Service Center where Mr. Miller maintained his office. (Mr. Kryfka is one of 15 Caucasian employees who work at that office; there are no blacks employed there in professional positions, and only one in a clerical position.) According to this email, Kryfka reported that Mr. Miller was going after the Division Administrators from named offices, including the Plaintiff's office, each of which was headed by African Americans and that he was not afraid of discrimination filings.

13. Plaintiff finally had a personal meeting with Mr. Miller to review his evaluation on 11/17/06. Danny Swift (Caucasian) GS-14, who is Mr. Miller's Enforcement Program Coordinator, also attended. At this meeting, Mr. Miller revealed that it was Mr. Swift's input on the evaluation which led to Plaintiff's evaluation being reduced. Plaintiff questioned Mr. Swift if he had ever even seen Plaintiff's performance plan for the year and made any comparison of achievements against objectives. Mr. Swift admitted he had not. Plaintiff questioned Mr. Miller on how Mr. Swift was able to compare his performance goals for the year against what he actually accomplished for the year.

14. Shortly after this meeting, Plaintiff learned from another Division Administrator, Curtis Thomas from South Carolina (African American), during a phone conversation that he, Mr. Thomas, had a conversation with the African American Associate Administrator for Administration (SES), Marlene Thomas, on 11/28/06 relating to Plaintiff. Ms. Thomas held a SES managerial position over the Agency HR department. According to Thomas, Mr. Miller met with her only days earlier and expressed a desire to get rid of Plaintiff as Administrator for the DC office and sought information about how to go about that process. Plaintiff requested Mr. Thomas to document that conversation, which he did in an email to Plaintiff dated 11/28/2006.

15. Plaintiff submits that the events that took place thereafter were consistent with Mr. Miller's announced desire to get rid of him as administrator.

16. Plaintiff applied for, but was not selected for the Eastern Service Center Director position (GS-15) which was announced in late 2006. The person selected, Scott Poyer (Caucasian), had little to no field experience and little supervisory experience

4

within the agency. His background was in policy positions in headquarters. Mr. Miller was the deciding official on this selection but did not even participate in the interview process, in violation of the agency's own announced policies. Plaintiff timely initiated an EEO complaint over this non-selection.

17. On October 30, 2007, Mr. Miller issued Plaintiff a marginal evaluation for FY 2007, and denied him a within grade increase based on the less than fully successful rating given him. The justifications given for the poor evaluation were bogus and pretextual.

18. On December 3, 2007 Mr. Miller's boss, Dan Hartman (Caucasian), made a surprise visit to the Plaintiff's DC office and confiscated boxes of grant records that dated back several years. While the files were being removed, Mr. Hartman entered Plaintiff's office and stated, "You know they are going to find something." Plaintiff responded, "Find what. I have nothing to hide; have I done anything improper?" Without answering the question, Mr. Hartman suggested that Plaintiff move on to another agency or leave the DC office and take a detail at headquarters. Plaintiff declined. Plaintiff perceived the remarks to be threatening to his position because he had just recently learned that Ms. Marlene Thomas had been forced to resign because of alleged financial discrepancies.

19. On 12/18/07, Mr. Miller informed Plaintiff that most of his Southern Maryland duties were being transferred to the Baltimore office. Shortly thereafter one of Plaintiff's staff was reassigned to the Baltimore office to perform these same duties.

20. On 12/19/07, Mr. Miller proposed Plaintiff for a 7-day suspension for bogus reasons. Plaintiff appealed the suspension to Mr. Hartman, but despite demonstrating that the basis for the suspension was pretextual and unsupported, Mr. Hartman upheld a 5

day suspension, without even providing a review of the disputed evidence that Mr. Miller relied upon as the basis for the suspension.

21. On 9/03/08, Mr. Miller notified Plaintiff that his FY 08 performance evaluation would be delayed while he was put on a 90 day performance improvement plan. The Eastern Service Center Director, Scott Poyer, was assigned to monitor Plaintiff's performance.

22. Plaintiff had weekly (and later bi-weekly) meetings with Mr. Poyer throughout the 90 day period and received written summaries of the meetings. Throughout the performance period Plaintiff was regularly reassured that he was performing the assigned tasks to standard and that he was doing everything that he was asked to do. Mr. Poyer also assured Plaintiff that he would receive the final review of his performance during the PIP as soon as it was completed.

23. On 2/06/09 Plaintiff was notified that he failed the PIP, was issued an unacceptable rating for FY 2008 and would be transferred involuntarily to a position in the Agency's Civil Rights Office. Plaintiff was not provided Mr. Poyer's report until several weeks after being told that he failed the PIP, and only after repeated requests for a copy.

24. Ever since Mr. Miller was assigned to supervise Plaintiff, he has suffered greatly from the feeling that he was being railroaded out of a position that he loved deeply because of racial prejudice and retaliation. Plaintiff's health has declined and he has needed medical attention. Plaintiff also submits that his enjoyment of life in his job and relations with his loved ones have suffered because of the severe anxiety that he has suffered from feeling that he was being set up for removal from his position.

## CLAIMS

I. RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII

25. The plaintiff incorporates by reference paragraphs 1 through 24 above.

26. The defendant's decisions *inter alia* in evaluating plaintiff poorly, suspending plaintiff for bogus offenses, bypassing plaintiff for promotion, issuing plaintiff poor performance evaluations for FY 2006, 2007 and 2008 and then removing plaintiff from his Division Administrator position and involuntarily reassigning plaintiff to another position as set forth in the paragraphs above were discriminatory because they were based on plaintiff's race in violation of 42 U.S.C. §2000e-16.

27. The defendant's decisions *inter alia* in evaluating plaintiff poorly, suspending plaintiff for bogus offenses, bypassing plaintiff for promotion, issuing plaintiff poor performance evaluations for FY 2007 and 2008 and then removing plaintiff from his Division Administrator position and involuntarily reassigning plaintiff to another position as set forth in the paragraphs above were taken in retaliation for plaintiff's complaining about race discrimination in violation of 42 U.S.C. §2000e-16.

28. As a result of the defendant's violations of Title VII, the plaintiff suffered a loss of employment opportunities, lost compensation and fringe benefits, and other rights and privileges of his employment.

29. As a result of the defendant's violations of Title VII, the plaintiff suffered emotional pain, mental anguish, humiliation and loss of enjoyment of life.

## RELIEF REQUESTED

WHEREFORE, the plaintiff requests that this Court grant him the following relief:

1. Issue an order declaring that the defendant has violated the plaintiff's rights under Title VII;

2. Issue an order directing the defendant to reinstate the plaintiff to the position he would have held were it not for the discrimination and retaliation against him and provide him full back pay and/or front pay and other benefits related to his employment;

3. Issue an order expunging plaintiff's discriminatory ratings and suspension;

4. Issue an order to re-issue plaintiff's performance ratings to what they would have been absent the discrimination;

5. Issue an order granting plaintiff performance awards discriminatorily denied to him;

6. Issue an order directing the defendant to pay the plaintiff compensatory damages for the emotional pain, mental anguish, humiliation and loss of enjoyment of life he suffered because of the defendant's discrimination in violation of Title VII;

7. Issue an order directing the defendant to pay the plaintiff pre- and post-judgment interest on the amounts owed to him;

8. Issue an order directing the defendant to pay the plaintiff his costs incurred in this action, including reasonable attorneys' fees;

9. Issue an order directing the defendant to take such other actions as are necessary to carry out the remedial purposes of the law.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues to which he is entitled to a jury trial under law.

FOR THE PLAINTIFF,

*[signature]* 4-16-09

James L. Kestell   DC 955310
Michael Deeds
Kestell & Associates
209 Midvale Street
Falls Church, VA 22046-3510
Ph:  703 237-2912
Fax:  703 237-4321